UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 19-1020 JGB (SHKx)** | Date | October 30, 2020 |
|---|---|---|---|
| Title | *Annie Li v. Apple Medical Center and Urgent Care, Inc.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Plaintiff's Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 38); and (2) VACATING the November 2, 2020 Hearing (IN CHAMBERS)

Before the Court is Annie Li's ("Plaintiff") motion for preliminary approval of class action settlement. ("Motion," Dkt. No. 38-1.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of the matter, the Court GRANTS the Motion.

## I. BACKGROUND

Plaintiff filed this action on June 4, 2019 against Apple Medical Care and Urgent Care, Inc. ("Defendant"). (Dkt. No. 1.) Defendant answered on July 2, 2019. (Dkt. No. 18.) Plaintiff filed the First Amended Complaint on September 4, 2020. ("FAC," Dkt. No. 34.) The FAC asserts the following six causes of action: (1) failure to pay overtime wages in violation of 29 U.S.C. § 201; (2) failure to pay overtime wages in violation of Cal. Lab. Code §§ 510, 1194, and 1198; (3) failure to provide meal and rest breaks in violation of Cal. Lab. Code §§ 226.7 and 512; (4) failure to provide accurate wage statements in violation of Cal. Lab. Code §§ 226 and 1174; (5) violation of Cal. Bus. and Prof. Code § 17200; and (6) violation Cal. Lab. Code §§ 2698-2699.5.

Plaintiff moved for preliminary approval of class action settlement on September 24, 2020. (Dkt. No. 38.) In support of the Motion, Plaintiffs attached several exhibits. (Joint Stipulation of Class Action Settlement, Dkt. No. 38-2 ("Settlement,"); Declaration of Kevin J. Stoops, Dkt. No. 38-3 ("Stoops Decl."); Proposed Settlement from Ret. Judge William C. Pate, Dkt. No. 38-4.) Defendant did not oppose.

## II.     LEGAL STANDARD

Approval of a class action settlement requires certification of a settlement class.  La Fleur v. Med. Mgmt. Int'l, Inc., 2014 WL 2967475, at *2–3 (C.D. Cal. June 25, 2014.  A court may certify a class if the plaintiff demonstrates the class meets the requirements of Federal Rules of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b).[1]  See Fed. R. Civ. P. 23; see also Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).  Rule 23(a) contains four prerequisites to class certification: (1) the class must be so numerous that joinder is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims of the class representative must be typical of the other class members; and (4) the representative parties must fairly and adequately protect the interests of the class.  See Fed. R. Civ. P. 23(a).  Rule 23(b) requires one of the following: (1) prosecuting the claims of class members separately would create a risk of inconsistent or prejudicial outcomes; (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive or declaratory relief benefitting the whole class is appropriate; or (3) common questions of law or fact predominate so that a class action is superior to another method of adjudication.  Fed. R. Civ. P. 23(b).

Class action settlements must be approved by the court.  See Fed. R. Civ. P. 23(e).  At the preliminary approval stage, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms."  Id.  "The settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval."  Acosta v. Trans Union, LLC, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original).  To determine whether a settlement agreement is potentially fair, a court considers the following factors: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.  Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003).

## III.    CONDITIONAL CERTIFICATION OF PROPOSED SETTLEMENT CLASS

The Settlement defines the class as follows: "All of Defendant's current and former non-exempt hourly employees that worked as nurses or physician assistants in California during the Class Period."  (Settlement, 6-7).  The Settlement defines the Class Period as "the period from June 4, 2015 through May 14, 2020."  (Id. 2.)  The Court first addresses the Rule 23(a) requirements and then turns to the Rule 23(b) requirements.

### A. Requirements of Rule 23(a)

---

[1] All references to "Rule" in this Order refer to the Federal Rules of Civil Procedure unless otherwise noted.

### 1. Numerosity

A class satisfies the prerequisite of numerosity if it is so large that joinder of all class members is impracticable. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). To be impracticable, joinder must be difficult or inconvenient, but need not be impossible. Keegan v. Am. Honda Motor Co., 284 F.R.D. 504, 522 (C.D. Cal. 2012). There is no numerical cutoff for sufficient numerosity. Id. However, 40 or more members will generally satisfy the numerosity requirement. Id. A plaintiff has the burden to establish that this requirement is satisfied. United Steel, Paper & Forestry, Rubber, Mfg. Energy v. Conoco Phillips Co., 593 F.3d 802, 806 (9th Cir. 2010). Here, Plaintiffs estimate fifteen individuals fall within the class definition. (Motion, 5.) While this number is lower than the typical numerosity requirement, the Court finds that in litigation of this complexity, joinder of fifteen employees would be an inefficient use of judicial resources. Thus, the court finds that numerosity is satisfied.

### 2. Commonality

The commonality requirement is satisfied when plaintiffs assert claims that "depend upon a common contention . . . capable of classwide resolution—which means that a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). Here, common questions include whether Defendant misclassified employees as exempt, failed to provide overtime and meal breaks, or issued inaccurate paychecks; and whether these failures, if true, violate federal and California law. (Motion, 15.) Class Members' claims therefore turn on the same factual and legal questions. Accordingly, Plaintiffs have established commonality.

### 3. Typicality

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff, and whether other class members have been injured by the same course of conduct." Wolin v. Jaguar Land Rover No. Am., 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting Hanon, 976 F.2d at 508). Because typicality is a permissive standard, the claims of the named plaintiff need not be identical to those of the other class members. Hanlon, 150 F.3d at 1020. Here, each Class Member's claim arises from the same underlying conduct: Defendant's alleged failure to adequately pay its employees. (Motion, 15-16.) Accordingly, the Court is satisfied that Plaintiffs have met the typicality requirement.

### 4. Adequacy

In determining whether a proposed class representative will adequately protect the interests of the class, the court should ask whether the proposed class representative and her counsel have any conflicts of interest with any class member and whether the proposed class representative and her counsel will prosecute the action vigorously on behalf of the class. Johnson v. General Mills, Inc., 275 F.R.D. 282, 288 (C.D. Cal. 2011).

Plaintiff maintains there is no conflict of interest between herself and members of the proposed settlement class, as their interests in this litigation are aligned. (Motion, 16.) Plaintiff is also represented by competent counsel with experience in class actions who do not have a conflict of interest with the class. (Id.; Stoops Decl. ¶¶ 9-10.) Thus, Plaintiff does not have a conflict of interest with the class that might prevent her from vigorously representing the interests of class members who suffered the alleged violations. Accordingly, the Court concludes both Plaintiff and Class Counsel will adequality represent the interests of the proposed class.

### B. Requirements of Rule 23(b)

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 614 (1997). Here, Plaintiff asserts that the Settlement satisfies the requirements of Rule 23(b)(3). (Motion, 16.)

Rule 23(b)(3) requires (1) issues common to the whole class to predominate over individual issues and (2) that a class action be a superior method of adjudication for the controversy. See Fed. R. Civ. P. 23(b)(3). As to predominance, the "inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Hanlon, 150 F.3d at 1022 (quoting Amchem, 521 U.S. at 623). "[T]he examination must rest on 'legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement.'" Id. (same). A class should not be certified if the issues of the case require separate adjudication of each individual class member's claims. Id.

Here, adjudication by representation is warranted because questions common to the settlement class represent a significant aspect of the case and can be resolved for all members of each class in a single adjudication. Specifically, Plaintiff contends that common issues predominate because the claims of both Plaintiff and the proposed class stem from Defendant's common policies related to payment of its employees. (Mot. at 16-17.) The Court is satisfied that the common questions predominate.

A class action must also be superior to other methods of adjudication for resolving the controversy. Fed. R. Civ. P. 23(b)(3). To determine superiority, a court's inquiry is guided by the following pertinent factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D).  However, "[confronted] with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." Amchem, 521 U.S. at 620.

Here, Plaintiff notes the class mechanism provides an effective mechanism for vindicating the claims of class members because it would not be economical for individuals to pursue their claims. (Motion, 17.)  Accordingly, the Court concludes the superiority requirement is satisfied.

### IV.  SETTLEMENT AGREEMENT

**A.  Settlement Summary**

Below is an overview of the financial terms of the Settlement:

- Gross settlement amount: $210,000
- Attorneys' fees: $63,000
- Costs not to exceed: $10,000
- LWDA share of PAGA penalties $15,750
- Total service award for class representative: $5000
- Administration costs not to exceed: $2,500

(Motion, 8.)  Defendant will pay employer-side payroll taxes in addition to the $210,000 Gross Settlement Amount.  (Id. at 9.)  The $210,000 Gross Settlement Amount is non-reversionary, so no amount will be returned to Defendant.  (Id. at 4.)  Any checks issued to participating class members shall remain valid and negotiable for 180 days from the date of issuance.  (Settlement, 25.)  The parties agreed that the funds from any uncashed checks will be sent to The Children's Advocacy Institute, consistent with Cal. Code of Civ. Proc. § 384.  (Id.)

**B.  Financial Terms**

**1.  Participating Class Members**

Every participating class member who does not opt out will automatically receive a check for their Individual Settlement Payment. (Motion, 5.) Each Individual Settlement Payment will be allocated 20% to wages, 65% to penalties, and 15% to interest for tax purposes. (Id. at 9.)

**2. Payment and Distribution of Funds**

Subject to final approval, Defendant will fund provide the gross settlement amount within ten days of the settlement effective date. (Settlement, 3.) The Settlement Administrator shall pay each participating class member a pro rata portion of the Net Settlement Amount based on the number of weeks he or she worked as a Class Member. (Id. at 7.) The Settlement Administrator shall calculate that portion by calculating the number of days each participating class member was employed during the Class Period, dividing that number by seven, and rounding up to the nearest whole number. (Id.) Workweeks shall be assigned to former employees according to the formula described in the Settlement. (Id.) Participating class members who are sent settlement payments and PAGA group members who are sent PAGA group payments shall have 180 calendar days after mailing by the Settlement Administrator to cash their checks and will be so advised of such deadline. (Id. at 25.) They will receive reminder letters if the checks are not redeemed or deposited within 90 days after mailing. (Id.) Remaining funds go the cy pres beneficiary. (Id.)

**3. Class Representatives**

The Settlement provides for an incentive payment of $5000 to Plaintiff Annie Li for her participation in the litigation thus far. (Id. at 25.) Plaintiff Li also agrees a general release. (Id.)

**4. LWDA Payment**

Subject to Court approval, the Settlement allocates $21,000 of the gross settlement about to PAGA penalties ("PAGA Payment"). (Id. at 27.) The Settlement Administrator shall pay seventy-five percent (75%) ($15,750) of the PAGA Payment to the LWDA, and twenty-five percent (25%) ($5,250) of the PAGA Payment will become part of the net settlement amount distributed to PAGA Group Members. (Id.)

**5. Settlement Administration Costs**

The Parties request that the Court appoint Simpluris, Inc. ("Simpluris") as the settlement administrator. (Id., 6.) The Settlement allocates $2,500 to administer the settlement. (Id. at 28.)

**6. Attorneys' Fees and Costs**

The Settlement provides that Class Counsel may apply for attorneys' fees not to exceed to 30% of the Gross Settlement Amount, or $63,000, and actual litigation costs incurred, up to $10,000.  (Id., 26.)

### 7. Injunctive Relief

The Settlement does not appear to include any injunctive relief.

### 8. Release

Under the Settlement, Settlement Class Members who do not request exclusion will release Defendant from:

> "[A]ll claims, actions, demands, causes of action, suits, debts, obligations, damages, penalties, rights or liabilities, of any nature and description whatsoever, that are based on or reasonably related to the claims asserted in the Action, and specifically, the following claims based on or reasonably relating to claims asserted or alleged in the action: claims for unpaid wages (including claims for regular wages, overtime, final wages, and meal period and rest period premiums), interest, penalties (including waiting time penalties pursuant to Labor Code section 203 and wage statement penalties pursuant to Labor Code section 226), claims pursuant to Labor Code sections 201, 201.3, 202, 203, 204, 210, 218.5, 218.6, 226, 226.3, 226.7, 510, 512, 558, 1174(d), 1174.5, 1194, 1194.2, 1197, 1197.1, 1198, 1199, 2698 *et seq.*, 2802 and 2804, the Industrial Welfare Commission Wage Orders, claims under Business and Professions Code section 17200 et. seq., unclaimed compensatory, consequential, incidental, liquidated, punitive, and exemplary damages, restitution, interest, costs and attorneys' fees, injunction or equitable relief, and any other remedies available at law or in equity allegedly owed or available to the putative class members arising or reasonably flowing from any complaints (or amended complaints) filed in the Action occurring during the Class Period."

(Settlement, 4-5.)  Additionally, the PAGA Group will release Defendant from:

> "[A]ny and all claims and causes of action, known or unknown, contingent or accrued, arising out of the facts and claims asserted in the Action for civil penalties under the Private Attorney General Act of 2004 Cal. Labor Code § 2696 et seq. based upon the facts alleged: failure to provide meal and rest breaks; unpaid wages, including minimum wages, regular wages, overtime and double time wages; unpaid rest breaks; any and all theories for or related to "off the clock" work; wage statement violations; and separation pay violations.  This release extends only to the penalties available through PAGA."

(Id. at 5.)

### 9. Notice

Simpluris will mail notice packets to Class Members after receiving Class Data from Defendant, in accordance with the procedures and the Notice draft provided in the Settlement. (Id. at 17-18.)

## V. PRELIMINARY APPROVAL OF THE SETTLEMENT

"[Rule 23] requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Hanlon, 150 F.3d at 1026. To determine whether a settlement agreement meets these standards, the court considers a number of factors, including "the strength of the plaintiff's case, the risk, expense, complexity, and likely duration of further litigation, the risk of maintaining class action status throughout trial, the amount offered in settlement, the extent of discovery completed, and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement." Stanton, 327 F.3d at 959 (internal citations omitted). The settlement may not be a product of collusion among the negotiating parties. In re Mego Fin, Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)).

"At the preliminary approval stage, some of the factors cannot be fully assessed. Accordingly, a full fairness analysis is unnecessary." Litty v. Merrill Lynch & Co., 2015 WL 4698475, *8 (C.D. Cal. Apr. 27, 2015). Rather, the court need only decide whether the settlement is potentially fair, Acosta, 243 F.R.D. at 386, in light of the strong judicial policy in favor of settlement of class actions. Class Plaintiffs, 955 F.2d 1276. "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Hanlon, 15 F.3d at 1027.

### A. Extent of Discovery and Stage of the Proceedings

For a court to approve a proposed settlement, "[t]he parties must . . . have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement." Acosta, 243 F.R.D. at 396 (internal quotation marks omitted). Here, Plaintiff's counsel notes that they conducted "substantial" discovery, including reviewing "nearly every payroll record" for Class Members line by line and conferring with Defendant to clarify facts.

(Motion, 3, 13-14.) Because Plaintiffs completed significant investigation, the Court finds each side has a clear idea of the strengths and weaknesses of its respective cases and concludes that the extent of discovery and the stage of proceedings weigh in favor of preliminary approval.

### 1. Amount Offered in Settlement

In determining whether the amount offered in settlement is fair, a court compares the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation. In re Mego, 213 F.3d at 459.

The gross settlement amount is $210,000. Plaintiff calculated that possible damages could be as high as $534,624. (Motion, 4.) The mediator, retired Judge William Pate, calculated Defendant's possible exposure at $495,000. (Id.) The gross settlement amount is 39% of the former figure and 42% of the latter figure.

Although the settlement amount is a fraction of the maximum value of this litigation, "'[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.'" In re Mego, 213 F.3d at 459 (quoting Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir. 1982)). In In re Mego, the Ninth Circuit considered the difficulties in proving the case and determined the settlement amount, which was one-sixth of the potential recovery, was fair and adequate. Id. Given the difficulties posed to each individual of pursuing his or her claim and Defendant's possible insolvency, which may make further recovery difficult (Motion, 4) the Court finds the settlement amount is potentially fair.

### 2. Strength of Case and Risk, Expense, Complexity, and Likely Duration of Litigation

Plaintiff's factual allegations are strong. See generally FAC, ¶¶ 25-39. However, Defendant raises several defenses, including the purported existence of signed arbitration agreements with many of the class members. (Motion, 11.) Furthermore, Plaintiff contends that Defendant plans to oppose class certification. (Id.)

The Court believes the risk, expense, and likely duration of further litigation weigh in favor of preliminary approval. Without the Settlement, the parties would be required to litigate class certification, as well as the ultimate merits of the case—a process which the Court acknowledges is long and expensive. Overall, these factors weigh in favor of preliminary approval.

### 3. Experience and Views of Counsel

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." Nat'l Rural Telecomms. Coop. v.

DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal citation and quotation marks omitted). Here, the parties reached settlement after review of their claims and defenses, and Plaintiff's counsel supports approval of the Settlement. (Stoops Declaration ¶ 1.) Furthermore, Plaintiff's counsel is experienced in this type of litigation. (Id. ¶¶ 9-10.) The Court finds this factor weighs in favor of preliminary approval.

### 4. Collusion Between the Parties

"To determine whether there has been any collusion between the parties, courts must evaluate whether 'fees and relief provisions clearly suggest the possibility that class interests gave way to self interests,' thereby raising the possibility that the settlement agreement is the result of overt misconduct by the negotiators or improper incentives for certain class members at the expense of others." Litty, 2015 WL 4698475, at *10 (quoting Staton, 327 F.3d at 961).

As an initial matter, the Court notes that settlement negotiations were conducted at arms' length. (Settlement, 31.) The parties engaged in a mediation session with an experienced and respected mediator. (Motion, 2.) The use of a mediator experienced in the settlement process tends to establish that the settlement process was not collusive. See, e.g., Satchell v. Fed Ex. Corp., 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007). Furthermore, the fact that parties were not able to agree on a settlement figure until the mediator proposed $210,000 further suggests that the agreement was not collusive. (Motion, 2; Dkt. No. 38-5.) The Court thus turns to the financial terms of the Settlement.

A court may grant a modest incentive award to class representatives, both as an inducement to participate in the suit and as compensation for the time spent in litigation activities. See In re Mego, 213 F.3d at 463 (finding the district court did not abuse its discretion in awarding an incentive award to the class representatives). Plaintiff requests an incentive fee award of $5,000 for her service, involvement, and risk in connection with being a class representative and for a more general release of claims. (Settlement, 2.) The incentive payment is in addition to the individual payment allocated to Plaintiff under the Settlement. (Id. at 26.)

Plaintiff provides no concrete information about her role in the mediation, time spent participating in the litigation, or information regarding whether she was guaranteed to receive benefits. The Court therefore finds the requested service awards only potentially reasonable and may not grant it in full should it finally approve the settlement. For final fairness approval, the Court advises Plaintiff to provide greater detail. See Clesceri v. Beach City Investigations & Protective Servs., Inc., 2011 WL 320998, at *2, 9, 12 (C.D. Cal. Jan. 27, 2011) (preliminarily approving an incentive award of $3,000 each to the two named plaintiffs when the gross settlement amount was $100,000); Vanwagoner v. Siemens Indus., Inc., 2014 WL 1922731, at *2 (E.D. Cal. May 14, 2014) (preliminarily approving $5,000 as an incentive award when the maximum settlement amount was $225,000).

Generally, courts in the Ninth Circuit find that a benchmark of 25% of the common fund is a reasonable fee award.  Hanlon, 150 F.3d at 1029 ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."); Paul, Johnson, Alston & Hunt v. Graulty, 866 F.3d 268, 272 (9th Cir. 1989) (the 25% benchmark can be adjusted in either direction "to account for any unusual circumstances[,]" but the justification for adjustment must be apparent); Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 455 (E.D. Cal. 2013) (citing Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990)) ("In applying this method, courts typically set a benchmark of 25% of the fund as a reasonable fee award, and justify any increase or decrease from this amount based on circumstances in the record.").

The Court, in its discretion, may award attorneys' fees in a class action by applying either the lodestar method or the percentage-of-the-fund method.  Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1006 (9th Cir. 2002).  The Court determines the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.  McGrath v. Cnty. of Nev., 67 F.3d 248, 252 (9th Cir. 1995).  The hourly rates used to calculate the lodestar must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).  Next, the Court must decide whether to adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69–70 (9th Cir. 1975), abrogated on other grounds by City of Burlington v. Dague, 505 U.S. 557 (1992), that have not been subsumed in the lodestar calculation.  See Caudle v. Bristow Optical Co., Inc., 224 F.3d 1014, 1028–29 (9th Cir. 2000).[2]

Here, Plaintiff's counsel plans to petition for attorneys' fees not to exceed 30% of the gross settlement amount and specifies a cost limit of $10,000.  (Motion, 18.)  Plaintiff's counsel offers a lodestar crosscheck of $63,262.50.  (Id., 20.)  The Court finds 30% is a potentially reasonable award.  The cost limit is also potentially reasonable.  The Court may need to adjust the amounts at the final approval stage, depending on the extent and organization of documentation of fees and costs and depending on analysis of similar fee and cost awards.

**5. Remaining Factors**

---

[2] In Kerr, the Ninth Circuit adopted the 12–factor test articulated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) which identified the following factors for determining reasonable fees: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.  Kerr, 526 F.2d at 70.

In addition to the factors discussed above, the Court may consider the risk of maintaining class action status throughout the trial, the presence of a governmental participant, and the reaction of the class members to the proposed settlement. Staton, 327 F.3d at 959 (internal citations omitted). At this stage, the Court cannot fully analyze the remaining factors. For example, there is no governmental participant in this action. Additionally, the Settlement Class members have yet to receive notice of the Settlement and have not had an opportunity to comment or object to its terms. The Court directs Plaintiff, in her motion for final approval, to provide briefing on these issues.

On balance the factors support preliminary approval of the Settlement. The Settlement is potentially fair, adequate, and reasonable.

## VI.  CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' Motion for Preliminary Approval. The Court ORDERS as follows:

1. The Settlement Agreement is preliminarily approved as potentially fair, reasonable, and adequate. However, in her motion for final approval, Plaintiff shall address each of the concerns raised above.

2. The following Settlement Class are certified for settlement purposes only:

    All of Defendant's current and former non-exempt hourly employees that worked as nurses or physician assistants in California during the Class Period. The Settlement Class shall not include any person who submits a timely and valid request for exclusion as provided in the Settlement.

3. The Court appoints Kevin J. Stoops, Charles R. Ash and Trenton R. Kashima of Sommers Swartz, P.C., as well as Jean-Claude Lapuyade of JCL Law Firm, APC, to serve as counsel on behalf of the Settlement Class for purposes of settlement only.

4. Plaintiff Annie Li is appointed as the representative of the Settlement Class for purposes of settlement only.

5. The Court appoints Simpluris, Inc. as the settlement administrator.

6. The Class Notice form is approved.

7. Defendant will provide Claims Administrator with the information for Class Members by November 15, 2020.

8. The Court authorizes distribution of Class Notice to the Settlement Class members by first-class regular mail and pursuant to the Settlement by November 30, 2020.

9. Class members shall mail Elections Not to Participate and Objections by January 15, 2021.

10. Deadline for filing Motion for Attorneys' Fees and Costs shall be February 1, 2021.

11. Deadline for parties to file response to objections is **February 16, 2021.**

12. The hearing date for the Final Fairness Hearing is hereby set for **February 22, 2021** at 9:00 a.m. in Courtroom 1 of the United States District Court for the Central District of California, Eastern Division located at 3470 12th Street, Riverside, California 92501.

**IT IS SO ORDERED.**