UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 19-1020 JGB (SHKx)** | Date | September 13, 2021 |
| Title | *Annie Li v. Apple Medical Center and Urgent Care, Inc.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Phyllis A. Preston |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| Charles R. Ash, IV | Jonathan Kent |

**Proceedings:**   Order (1) DENYING Plaintiffs' Motion for Final Approval of Class Action Settlement (Dkt. No. 58).

Before the Court is Annie Li's ("Plaintiff") unopposed motion for final approval of class action settlement ("MFA," Dkt. No. 58.)  The Court held a final approval hearing on September 13, 2021.  Upon consideration of the papers filed in support of and in opposition to the Motion, as well as oral argument, the Court DENIES the Motion.

## I.  BACKGROUND

Plaintiff filed this action on June 4, 2019 against Apple Medical Care and Urgent Care, Inc. ("Defendant") (collectively, the "Parties").  ("Complaint," Dkt. No. 1.)  Defendant answered on July 2, 2019.  ("Answer," Dkt. No. 18.)  Plaintiff filed the First Amended Complaint on September 4, 2020.  ("FAC," Dkt. No. 34.)  The FAC asserts the following six causes of action: (1) failure to pay overtime wages in violation of 29 U.S.C. § 201; (2) failure to pay overtime wages in violation of Cal. Lab. Code §§ 510, 1194, and 1198; (3) failure to provide meal and rest breaks in violation of Cal. Lab. Code §§ 226.7 and 512; (4) failure to provide accurate wage statements in violation of Cal. Lab. Code §§ 226 and 1174; and (5) violation of Cal. Bus. And Prof. Code § 17200; and (6) violation the Private Attorney General Act ("PAGA"), Cal. Lab. Code §§ 2698–2699.5.

//
//
//
//

>Plaintiff asserts these causes of action on behalf of the following putative class:
>
>>All of Defendant's current and former hourly employees who were classified as exempt from overtime, who provided medical care services for Defendant within the past three years.

(FAC ¶ 40.) On September 1, 2020, Plaintiff moved for preliminary approval of a class action settlement. ("First MPA," Dkt. No. 32.) The Court struck the First MPA on September 4, 2020. (Dkt. No. 35.)

On September 24, 2020, Plaintiff filed a renewed moved for preliminary approval of class action settlement. ("Second MPA," Dkt. No. 38.) Defendant did not oppose the Second MPA. The Court granted the Second MPA on October 30, 2020. ("Second MPA Order, Dkt. No. 40.) In the Second MPA Order, the Court certified a Settlement Class; appointed Kevin J. Stoops, Charles R. Ash, and Trenton R. Kashima of Sommers Swartz, P.C., as well as Jean-Claude Lapuyade of JCL Law Firm, as Class Counsel; appointed Annie Li as class representative; appointed Simpluris, Inc. as the settlement administrator; approved the requisite Class Notice Form; authorized the mailing of Class Notice forms; and set deadlines for Defendant to provide the Claims Administrator, for Class Members to mail objections and exclusions, and for filing a motion for attorneys' fees and costs. (Id. at 12–13.) The Court initially set the final fairness hearing for February 22, 2021. (Id.)

On February 2, 2021, the Parties jointly moved to change two terms of the proposed settlement, due to drafting errors: the date of the settlement period and the number of payment installments. ("MTA," Dkt. No. 43; "MTA Memorandum," Dkt. No. 43-1.) The Parties also attached the corrected settlement agreement. ("Settlement," Dkt. No. 43-2.) In response, the Court vacated the fairness hearing set for February 22, 2021 (Dkt. No. 44), then granted the MTA on February 25, 2021. ("MTA Order," Dkt. No. 45.) The MTA Order extended the respective deadlines set in the Second MPA Order and set the final fairness hearing for June 21, 2021. (Id.)

On June 1, 2021, Plaintiff filed an unopposed motion for attorneys' fees, costs, and incentive award only, without the requisite motion for final approval of the class action settlement. ("Fee Motion, Dkt. No. 46.) In support of the Fee Motion, Plaintiff included the following documents:

- Memorandum of Points and Authorities in Support of the Fee Motion ("Fee Motion Memorandum," Dkt. No. 46-1);
- Declaration of Kevin J. Stoops ("Stoops Fee Declaration," Dkt. No. 46-2); and
- Sommers Schwartz Itemized Fees and Expenses ("S2 Summary," Dkt. No. 46-3).

The Court vacated the June 21, 2021 fairness hearing until the motion for final approval could be filed. (Dkt. No. 47.)

On June 22, 2021, Plaintiff filed a motion for curative notice and to hold Defendant in contempt, alleging Defendant had unilaterally modified the class definition such that 150% more individuals received notice of the settlement. ("MCN," Dkt. No. 48; Dkt. No. 48-1.) Defendant opposed the MCN on July 2, 2021. ("MCN Opposition," Dkt. No. 49.) Plaintiff replied on July 9, 2021. ("MCN Reply," Dkt. No. 52.) On July 23, 2021, the Court granted the MCN. ("MCN Order," Dkt. No. 53.) In the MCN Order, the Court ordered the Settlement Administrator to issue a curative notice to those who had received the settlement notice in error, and ordered the Parties to stipulate to a proposed schedule for final settlement approval. Because the MCN had not provided evidence in support of issuing sanctions against Defendant, the Court allowed Plaintiff to submit supplemental fee information before it adjudicated the MCN's fee request portion. (MCN Order at 6.) Plaintiff filed the supplemental briefing on August 2, 2021 (Dkt. No. 55), which the Court granted on August 5, 2021. (Dkt. No. 56.)

On August 2, 2021, the Parties filed a stipulated to amend the final settlement approval schedule. (Dkt. No. 54.) On August 10, 2021, the Court granted the stipulation and set the final fairness hearing for Monday, September 13, 2021 at 9:00 a.m.

On August 23, 2021, Plaintiff filed the unopposed MFA, and included in support the following documents:

- Memorandum of Points and Authorities in Support of the MFA ("MFA Memorandum," Dkt. No. 58-1);
- Declaration of Kevin J. Stoops ("Stoops Declaration," Dkt. No. 58-2);
- Declaration of Christina Fowler (Simpluris, Inc.) Regarding Notice and Settlement Administration ("Fowler Declaration," Dkt. No. 58-3); and
- Declaration of Jean-Claude Lapuyade ("Lapuyade Declaration," Dkt. No. 58-4).

Defendants do not oppose the MFA.

## II. THE SETTLEMENT AGREEMENT

The parties finalized and executed the class action settlement agreement in February 2021. ("Settlement," Dkt. No. 43-2.) The Settlement defines the settlement class ("Class") as follows:

> [A]ll of Defendant's current and former non-exempt hourly employees that worked in California during the Class Period. The "Settlement Class Members" shall not include any person who submits a timely and valid request for exclusion as provided in this Agreement.

(Settlement § I.DD; MFA Mem. at 6.) The Settlement defines the Class Period as "the period from June 4, 2015 through the date the Court enters the order granting preliminary settlement approval." (Settlement § I.F.) Accordingly, the Class Period is from June 4, 2015 to October 30, 2020. (Second MPA Order; MTA Mem. at 1.)

### A. Settlement Summary

Below is an overview of the financial terms of the Settlement:

- Gross settlement amount:                            $210,000.00
- Attorneys' fees:                                    $63,000.00
- Costs not to exceed:                                $10,000.00
- LWDA share of PAGA penalties:                       $15,750.00
- Total service award for class representative:       $5,000.00
- Administration costs not to exceed:                 $2,500.00

(MFA Mem. at 5, 8–9; Settlement §§ III.A.1, III.M.)  Defendant will pay employer-side payroll taxes in addition to the $210,000.00 Gross Settlement Amount.  (MFA Mem. at 9; Settlement § III.A.1.)  The $210,000.00 Gross Settlement Amount is non-reversionary, so no amount will be returned to Defendant.  (MFA Mem. at 5.)  Any checks issues to participating class members shall remain valid and negotiable for 180 days from the date of issuance.  (Settlement § III.M.1.e.)  The Parties agreed that the funds from any uncashed checks will be sent to The Children's Advocacy Institute, consistent with Cal. Code of Civ. Proc. § 384.  (Id.)

### B. Financial Terms

#### 1. Settlement Class Members

"Settlement Class Members" is defined as "all of Defendant's current and former non-exempt hourly employees that worked in California during the Class Period.  The 'Settlement Class Members' shall not include any person who submits a timely and valid request for exclusion as provided in this Agreement."  (Settlement § I.DD; MFA Mem. at 6.)  The Class Period is from June 4, 2015 to October 30, 2020.  (Second MPA Order; MTA Mem. at 1.)  There are 15 individuals who fall within the Class definition.  (MFA Mem. at 5.)

Every participating Class Member who does not opt out will automatically receive a check for their Individual Settlement Payment.  (Id. at 6.)  Each Individual Settlement Payment will be allocated 20% to wages, 65% to penalties, and 15% to interest for tax purposes.  (Id. at 9.)

#### 2. Payment and Distribution of Funds

Subject to final approval, Defendant will fund the gross settlement amount in three installments: (1) the first payment of $110,000.00 is due within 15 days of the final approval of the settlement by the Court; (2) the second payment of $50,000.00 is due six months thereafter; and (3) the third and final payment of $50,000.00 is due six months after the second payment.  (Id. at 8; Settlement § III.A.2.)  Defendant's failure to timely pay any of the three installment amounts will result in a stipulated judgment of $300,000.00.  (MFA Mem. at 8.)

The Settlement Administrator shall pay each participating Class Member a pro rata portion of the Net Settlement Amount based on the number of weeks he or she worked as a Class Member. (Settlement § III.M.1.) The Settlement Administrator shall calculate that portion by calculating the number of days each participating Class Member was employed during the Class Period, dividing that number by seven, and rounding up to the nearest whole number. (Id. § I.FF.) Workweeks shall be assigned to former employees according to the formula described in the Settlement. (Id.) Payments will be issued by mail no later than 25 calendar days after Defendant completes the last installment of payment of the gross settlement amount. (Id. § III.M.1.d.)

The Settlement Administrator shall also pay Settlement Class Members who are also part of the "PAGA Group" from the Net Settlement Amount based on the number of weeks he or she worked as a Class Member. (Id. § III.M.4.) The Settlement defines "PAGA Group" as "the State of California and all of Defendant's current and former non-exempt loan officers and loan officer assistants paid on a draw that worked in California during the PAGA Period." (Id. § I.Q.) The "PAGA Period" means the period from June 4, 2018 through October 30, 2020. (Id. § I.R.) The Settlement Administrator shall calculate that portion by dividing the number of weeks worked for each PAGA Group Member by the total number of weeks worked by all PAGA Group Members, and multiplying that figure by the total amount set aside for PAGA payments from the Net Settlement Amount.

Participating Class Members who are sent settlement payments and PAGA Group Members who are sent PAGA group payments shall have 180 calendar days after mailing by the Settlement Administrator to cash their checks and will be so advised of such deadline. (Id. § III.M.1.e.) They will receive reminder letters if the checks are not redeemed or deposited within 90 days after mailing. (Id.) Remaining funds go to the cy pres beneficiary. (Id.)

3. **Class Representative**

The Settlement provides for an incentive award of up to $5,000.00 to Plaintiff Annie Li for her participation in the litigation thus far. (Id. § III.M.2.) Plaintiff also agrees to a general release. (Id. § III.D.)

4. **California Labor and Workforce Development Agency (LWDA) Payment**

The Settlement allocates $21,000.00 of the gross settlement amount to PAGA penalties ("PAGA Payment"). (Id. § III.M.4.) The Settlement Administrator shall pay seventy-five percent (75%) of the PAGA Payment, or $15,750.00, to the LWDA; twenty-five percent (25%) of the PAGA Payment, or $5,250.00, will become part of the net settlement amount distributed to PAGA Group Members. (Id.) The distribution of the PAGA Payment to PAGA Group Members was described above.

//
//

### 5. Settlement Administration Costs

The Court appointed Simpluris, Inc. ("Simpluris") as the settlement administrator. (Second MPA Order at 12.) The Settlement allocates $2,500 to administer the settlement agreement. (Settlement § III.M.5.) The Settlement Administrator shall be paid for these settlement administration costs no later than 25 calendar days after Defendant completes the last installment of payment of the gross settlement amount. (Id.) Simpluris mailed notice packets to the class, and has kept track of opt-out requests and objections to the Settlement. (Fowler Decl. ¶¶ 3–10.)

The Court also ordered Simpluris to mail curative notice to those who had received notice of the Settlement in error. (MCN Order at 5–6.) According to the Parties, the curative notice was mailed on August 2, 2021. (MFA Mem. at 1 n.1.) These costs are not paid out of the gross settlement amount but by Defendant's counsel. (MCN Order at 6.)

### 6. Attorneys' Fees and Costs

The Settlement provides that Class Counsel may apply for attorneys' fees not to exceed 30% of the Gross Settlement Amount, or $63,000.00, and actual litigation costs incurred, up to $10,000.00. (Settlement § III.M.3; MFA Mem. at 8–9.) Class Counsel seeks $63,000.00 in attorneys' fees and $7,389.27 in costs, which includes the $2,500.00 settlement administration cost. (Fee Mot. Mem. at 3.)

## C. Injunctive Relief

The Settlement does not appear to include any injunctive relief.

## D. Release

Under the Settlement, Settlement Class Members who do not request exclusion agree to release Defendant from:

> [A]ll claims, actions, demands, causes of action, suits, debts, obligations, damages, penalties, rights or liabilities, of any nature and description whatsoever, that are based on or reasonably related to the claims asserted in the Action, and specifically the following claims based on or reasonably relating to claims asserted or alleged in the action: claims for unpaid wages (including claims for regular wages, overtime, final wages, and meal period and rest period premiums), interest, penalties (including waiting time penalties pursuant to Labor Code section 203 and wage statement penalties pursuant to Labor Code section 226), claims pursuant to Labor Code sections 201, 201.3, 202, 203, 204, 210, 218.5, 218.6, 226, 226.3., 226.7, 510, 512, 558, 1174(d), 1174.5, 1194, 1194.2, 1197, 1197.1, 1198, 1199, 698 et seq., 2802 and 2804, the Industrial Welfare Commission Wage Orders, claims under Business and Professions Code section 17200, et seq., unclaimed

> compensatory, consequential, incidental, liquidated, punitive, and exemplary damages, restitution, interest, costs and attorneys' fees, injunctive or equitable relief, and any other remedies available at law or in equity alleged owed or available to the putative class members arising or reasonably flowing from any complaints (or amended complaints) filed in the Action occurring during the Class Period.

(Settlement §§ I.X, III.B.)  Additionally, the PAGA Group will release Defendant from:

> [A]ny and all claims and causes of action, known or unknown, continent or accrued, arising out of the facts and claims asserted in the Action for civil penalties under the Private Attorney General Act of 2004 Cal. Labor Code § 2698 et seq. based upon the facts alleged: misclassification as exempt; failure to provide meal and rest breaks; unpaid wages, including minimum wages, regular wages, overtime and double time wages; unpaid rest breaks, any and all theories for or related to "off the clock" work; wage statement violations; and separation pay violations. This release extends only to the penalties available through PAGA.

(Id. §§ I.Y, III.C.)  Plaintiff, as the class representative, also agrees to a broader release on behalf of Plaintiff, Plaintiff's heirs, successors and assigns to do as follows:

> [W]aive, release, acquit and forever discharge the Released Parties and each of their respective parents, subsidiaries, affiliates, predecessors, successors, assigns, their owners, officers, directors, attorneys, agents, insurers, re-insurers, servants, representatives, current and former employees, heirs and assigns of each of them (collectively referred to as "Released Parties by Plaintiff") from any and all claims, actions, charges, complaints, grievances and causes of action, of whatever nature, whether known or unknown, which exist or may exist on their behalf as of the date of this Agreement, including but not limited to any and all tort claims, contract claims, wage claims, wrongful termination claims, disability claims, benefit claims, public policy claims, retaliation claims, statutory claims, personal injury claims, emotional distress claims, invasion of privacy claims, defamation claims, fraud claims, quantum meruit claims, and any and all claims arising under any federal, state or other governmental statute, law, regulation or ordinance, including, but not limited to claims for violation of the Fair Labor Standards Act, the California Labor Code, the Wage Orders of California's Industrial Welfare Commission, other state wage and hour laws, the Americans with Disabilities Act, the Age Discrimination in Employment Act (ADEA), the Employee Retirement Income Security Act, Title VII of the Civil Rights Act of 1964, the California Fair Employment and Housing Act, the California Family Rights Act, the Family Medical Leave Act, California's Whistleblower Protection Act, California Business & Professions Code Section 17200 et seq., and any and all claims arising under any federal, state or other governmental statute, law, regulation or ordinance.

(Id. § III.D.) Plaintiff also waives her right under California Civil Code § 1542, which states that "[a] general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." (Id.) Furthermore, even if Plaintiff discovers additional or different claims or facts, "Plaintiff expressly agrees to fully, finally and forever settle and release any and all claims against the Released Parties by Named Plaintiff, known or unknown, suspected or unsuspected, which exist or may exist on behalf of or against the other at the time of execution of this Agreement, including, but not limited to, any and all claims relating to or arising from Plaintiff's employment with Defendant." (Id.)

**E.  Notice**

The Settlement's Notice Procedures require Defendant to provide the Settlement Administrator with the Class Data used for preparing and mailing notice packets no later than 10 calendar days after preliminary approval of the settlement agreement. (Id. § III.L.1.) The notice packets contain the Notice Form authorized by the Court in the Second MPA Order. (Id. § III.L.2; Second MPA Order at 12.) Defendant did not provide the Class Data to Simpluris until March 3, 2021. (Fowler Decl. ¶ 6.) While this was not within 10 days of the Court's Second MPA Order (entered on October 30, 2020), Defendant did provide the Class Data before March 15, 2021,[1] the deadline prescribed in the Court's MTA Order, which amended the Second MPA Order. (MTA Order at 1.) As previously noted and heard by the Court, Defendant also erroneously sent Simpluris a list of 35 individuals, instead of the correct class of 15, and, as a result, Simpluris sent notice to those 35 individuals. (MCN Order at 4; Fowler Decl. ¶¶ 6, 8.) The Court ordered Simpluris to mail curative notice to those who had received notice of the Settlement in error. (MCN Order at 5–6.) The curative notice was mailed on August 2, 2021. (MFA Mem. at 1 n.1.)

To deliver notice, the Settlement Administrator must mail or email these notice packets to Class Members no later than 14 calendar days after receiving the Class Data from Defendant. (Settlement §§ III.L.2-L.3.) The Court's MTA Order, however, authorized the Settlement Administrator to provide mailed notice by April 1, 2021. (MTA Order at 2.) Simpluris mailed and emailed the Notice Packets on April 1, 2021, pursuant to the MTA Order. (Fowler Decl. ¶ 8; MFA Mem. at 10.)

The Settlement Administrator must also re-mail any mail returned because of an incorrect address to a more current address. (Settlement § III.L.4.) The Settlement Administrator is responsible for tracing the mailing address of any Class Member whose notice packet was returned and re-mailing the notice packet to Class Members for whom a new address is found, unless the Class Member is currently employed by Defendant. (Id.) In the latter case, Defendant will contact the Class Member and request that they transmit a correct address to the

---

[1] The MTA Order orders Defendant to provide this information by March 15, 2020, but the correct date should have been March 15, 2021.

Settlement Administrator.  (Id.)  The Settlement Administrator received two undelivered notice packets.  (Fowler Decl. ¶ 9.)  The Settlement Administrator was able to trace a correct address for and re-mail one of the undelivered notice packets, but was unable to trace a new address for and re-email the second undelivered notice packet.  (Fowler Decl. ¶ 9.)  The MFA does not state whether the undelivered notice packets went to one of the individuals who should not have received notice in the first place or to one of the fifteen Class Members, and Simpluris has not provided an updated declaration with this information.[2]

Class Members had until May 17, 2021 to object or opt-out of the Settlement.  (MTA Order at 2; Fowler Decl. Ex. B, Tab 2.)  There have been no objections and no opt-outs.  (MFA Mem. at 10, 13; Fowler Decl. Ex. B, Tab 2.)

### F.  Administration

Simpluris serves as the settlement administrator.  (Settlement § I.CC; Second MPA Order at 12.)  Settlement administration duties include establishing and administering the Qualified Settlement Fund; receiving and re-mailing undeliverable notice packets; receiving, reporting, and validating objections and requests for exclusion; receiving calls from Class Members about the Settlement on a toll-free telephone number; calculating settlement shares; issuing the checks due and tax reports required under the Settlement; and otherwise administering the Settlement.  (Settlement § III.K; Fowler Decl. ¶¶ 3–4.)

The Settlement Administrator has the final authority to resolve disputes concerning the eligibility and amount of settlement payments.  (Settlement § III.L.5.)

### III.  LEGAL STANDARD

### A.  Class Action Settlement

Class action settlements must be approved by the Court.  See Fed. R. Civ. P. 23(e).  Whether to approve a class action settlement is "committed to the sound discretion of the trial judge."  Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  A strong judicial policy favors settlement of class actions.  Id.  Nevertheless, the Court must examine the settlement as a whole for overall fairness.  Cheng Jiangchen v. Rentech, Inc., 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)).  Neither district courts nor appellate courts have the power to delete, modify, or substitute provisions in the negotiated settlement agreement.  Hanlon, 150 F.3d at 1026.  "The settlement must stand or fall in its entirety."  Id.

---

[2] Plaintiff submitted a declaration by Simpluris's Case Manager Christina Fowler in support of the MFA.  (See Fowler Decl.)  This declaration, however, is dated June 1, 2021, which predates the Court's MCN Order.

In order to approve a class action settlement, the Court must conduct a three-step inquiry. See Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012). First, it assesses whether the parties have met notice requirements under the Class Action Fairness Act. Id. Next, it determines whether the notice requirements of Federal Rule of Civil Procedure 23(c)(2)(B) have been satisfied. Id. Finally, the Court must find that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(2). Id. Here, CAFA does not apply, so the Court only conducts a two-step inquiry.

**B. Attorneys' Fees**

The procedure for requesting attorneys' fees is set forth in Rule 54(d)(2) of the Federal Rules of Civil Procedure. While the rule specifies that requests shall be made by motion "unless the substantive law governing the action provides for the recovery of . . . fees as an element of damages to be proved at trial," the rule does not itself authorize the awarding of fees. "Rather, [Rule 54(d)(2)] and the accompanying advisory committee comment recognize that there must be another source of authority for such an award . . . [in order to] give [] effect to the 'American Rule' that each party must bear its own attorneys' fees in the absence of a rule, statute or contract authorizing such an award." MRO Commc'ns, Inc. v. AT&T Co., 197 F.3d 1276, 1281 (9th Cir. 1999).

In class actions, statutory provisions and the common fund exception to the "American Rule" provide that authority for awarding attorneys' fees. See Newberg on Class Actions § 14.1 (4th ed. 2005) ("Two significant exceptions [to the 'American Rule'] are statutory fee-shifting provisions and the equitable common-fund doctrine."). Rule 23(h) authorizes a court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Under normal circumstances, once it is established that a party is entitle to attorneys' fees, "[i]t remains for the district court to determine what fee is 'reasonable.'" Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

## IV. DISCUSSION

**A. Rule 23(a) and (b) Requirements**

In the October 30, 2020 Second MPA Order, the Court conditionally certified the following Settlement Class under Rules 23(a) and 23(b)(3):

> All of Defendant's current and former non-exempt hourly employees that worked <u>as nurses or physician assistants</u> in California during the Class Period. The Settlement Class shall not include any person who submits a timely and valid request for exclusion as provided in the Settlement.

(Second MPA Order at 12 (emphasis added).) Plaintiff submitted this definition in the Second MPA. (Second MPA at 5.) The MFA and Settlement, however, define the Class differently, excluding the phrase "as nurses or physician assistants":

> All of Defendant's current and former non-exempt hourly employees that worked in California during the Class Period. The "Settlement Class Members" shall not include any person who submits a timely and valid request for exclusion as provided in this Agreement.

(MFA Mem. at 6; Settlement § I.DD.)  While the Court "need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b)," Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 974 (E.D. Cal. 2012), this is not the case here.  Because the Settlement Class has changed since it was conditionally certified, the Court cannot confirm its order certifying the Settlement Class.  Instead, the Court reviews whether the revised definition satisfies the criteria for class certification.

      The MFA does not acknowledge that the Class definition has changed and provides no argument for whether the revised definition, removing the phrases "as nurses or physician assistants," meets the requirements of Rule 23(a) or Rule 23(b).  Nor can the Court presume that the revised Class definition provided in the MFA and Settlement does not materially change the analysis.  The Parties had disagreed on the meaning of these very two definitions of the Class during the motion for curative notice proceedings.  (MCN at 3–7; MCN Opp'n at 9–11; MCN Reply at 2–3.)  The Court cannot grant final approval based on a class definition that differs from that of a class preliminarily certified for purposes of settlement.  Accordingly, the MFA is DENIED.

      As the Court indicated at the September 13, 2021 hearing, Plaintiff will proceed to trial on her individual claims.  Trial is set for Tuesday, November 9, 2021 at 9:00 a.m.  The pretrial conference will be set for 15 days before trial on Monday, October 25, 2021 at 11:00 a.m.  The parties are instructed to consult and abide by this Court's order pertaining to pretrial filings.  Failure to do so will result in dismissal of the case.

**IT IS SO ORDERED.**